UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRAYLIE H.,[1]                            )
                                          )
                    *Plaintiff*,          )
                                          )
        *v.*                              )        No. 2:22-cv-218-MG-JMS
                                          )
KILOLO KIJAKAZI, Acting Commissioner of the )
Social Security Administration,           )
                                          )
                    *Defendant*.          )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In June 2020, Plaintiff Braylie H. applied for Childhood Disability Benefits ("CDB")[2],

Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB") from the Social

Security Administration ("SSA"), alleging a disability onset date of March 31, 2010. [Filing No.

9-5 at 2-12.] Her applications were initially denied on October 1, 2020, [Filing No. 9-3 at 2-5],

and upon reconsideration on February 18, 2020, [Filing No. 9-4 at 2-25]. She amended her alleged

onset date to April 1, 2019, in October 2021. [Filing No. 9-5 at 24.] Administrative Law Judge

Deborah Van Vleck (the "ALJ") conducted a hearing on November 2, 2021. [Filing No. 9-2 at 38-

76.] The ALJ issued a decision on November 17, 2021, concluding that Braylie H. was not entitled

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] To be eligible for Social Security Income, or Childhood Disability Benefits, a claimant must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A). To be entitled to CDB, a claimant must show that she became disabled before becoming 22 years old. *See* 42 U.S.C. § 402(d).

to receive benefits. [Filing No. 9-2 at 16-31.] The Appeals Council denied review on April 1, 2022. [Filing No. 9-2 at 2-4.] On June 3, 2022, Braylie H. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 7; Filing No. 8.] For the following reasons, the Court **REVERSES** the decision of the ALJ denying Braylie H. benefits and **REMANDS** for further proceedings.

## I.
### STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. §

404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Braylie H. was 26 years old on April 1, 2019—the date of her amended alleged onset of disability. [Filing No. 9-5 at 2, 24.] Braylie H. has at least a high school education and has past work experience as assistant manager and crew member. [Filing No. 9-6 at 4.] Braylie H.'s October 2018 application alleges that she can no longer work because she has anxiety, depression, OCD and agoraphobia. [Filing No. 9-6 at 3.] Following the November 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Braylie H. was not disabled. [Filing No. 9-2 at 16-31.] Specifically, the ALJ found as follows:

- Born on April 22, 1992, the claimant had already attained age 22 prior to April 1, 2019, the amended alleged onset date. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024. [Filing No. 9-2 at 19.]
- At Step One, Braylie H. has not engaged in substantial gainful activity[4] since April 1, 2019 (the amended alleged onset date). [Filing No. 9-2 at 19.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Braylie H. "has the following severe impairments: mental impairment diagnosed to include anxiety and panic disorder, obsessive compulsive disorder ('OCD'), premenstrual syndrome ('PMS'), and depression." [Filing No. 9-2 at 19.]

- At Step Three, Braylie H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 21.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found that Braylie H. had "moderate" limitations in one area: (1) interacting with others; "mild" limitations in two areas: (1) ) concentrating, persisting, or maintaining pace ("CPP") and (2) adapting or managing oneself; and "no limitation" in one area: (1) understanding, remembering, or applying information. [Filing No. 9-2 at 22.]

- After Step Three but before Step Four, Braylie H. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing work that requires no more than occasional interaction with the public." [Filing No. 9-2 at 23.]

- At Step Four, the ALJ found Braylie H. been unable to perform any past relevant work. [Filing No. 9-2 at 29.]

- At Step Five, relying on the VE's testimony and considering Braylie H.'s age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform, such as linen room attendant, day worker, and laundry worker I. [Filing No. 9-2 at 30.]

### III.
#### DISCUSSION

Braylie H. argues the ALJ erred in the following ways: (1) by erring at Step Three because Braylie H.'s conditions meet a Listing; (2) by improperly discrediting her testimony about her subjective symptoms under SSR[5] 16-3p; (3) by not properly accommodating her mental limitations in the RFC; (4) by failing to properly evaluate the medical opinions; and (5) by failing to provide a complete picture of her RFC limitation at Step Five.

---

[5] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

A.      **The ALJ's Step Three Listing Analysis**

Braylie H. contends that the ALJ made various errors at Step Three in evaluating whether Braylie H. met or medically equaled a Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1, which, if satisfied, would effectively render a finding that Braylie H. is *per se* disabled. The only listings at issue in this appeal are Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). It is a claimant's burden to show not only that her impairments meet a designated listing, but also that her impairments satisfy all of the criteria specified in a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Listings 12.04 and 12.06 have three paragraphs, designated A, B, and C, and a claimant's impairment must satisfy the requirements of **both** Paragraphs A and B, **or** the requirements of Paragraphs A **and** Paragraph C.

For Listing 12.04, a claimant must meet the following criteria:

**12.04 Depressive, bipolar and related disorders** … satisfied by A and B, or A and C:
A. Medical documentation of the requirements of paragraph 1 or 2:
1. Depressive disorder, characterized by five or more of the following: (a.) Depressed mood; (b.) Diminished interest in almost all activities; (c.) Appetite disturbance with change in weight; (d.) Sleep disturbance; (e.) Observable psychomotor agitation or retardation; (f.) Decreased energy; (g.) Feelings of guilt or worthlessness; (h.) Difficulty concentrating or thinking; or (i.) Thoughts of death or suicide.
2. Bipolar disorder, characterized by three or more of the following: (a.) Pressured speech; (b.) Flight of ideas; (c.) Inflated self-esteem; (d.) Decreased need for sleep; (e.) Distractibility; (f.) Involvement in activities that have a high probability of painful consequences that are not recognized; or (g.) Increase in goal-directed activity or psychomotor agitation.
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).
OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1

For Listing 12.06, a claimant must meet the following criteria:

**12.06 Anxiety and obsessive-compulsive disorders** … satisfied by A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. Anxiety disorder, characterized by three or more of the following; (a.) Restlessness; (b.) Easily fatigued; (c.) Difficulty concentrating; (d.) Irritability; (e.) Muscle tension; or (f.) Sleep disturbance.

2. Panic disorder or agoraphobia, characterized by one or both: (a.) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or (b.) Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3. Obsessive-compulsive disorder, characterized by one or both: (a.) Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or (b.) Repetitive behaviors aimed at reducing anxiety.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

**1.      *Paragraph C Criteria***

Braylie H. contends that the ALJ erred by not sufficiently addressing Paragraph C of Listings 12.04 and 12.06. [Filing No. 11 at 23.] She faults the ALJ for finding the Paragraph C criteria not met because (1) she lived in a "normal household environment" without relying on psychosocial support, (2) there was no evidence she responded to stressors with maladaptive behavior, and (3) she returned to college to pursue a degree despite her symptoms. [Filing No. 11 at 24.] To combat the ALJ's analysis, she points to evidence that she continues to suffer from severe mental health disorders; she has ongoing mental health treatment, contrary to the ALJ's conclusion; and she lives in a highly structured setting to diminish her symptoms, yet despite this structured setting she continues to experience panic attacks and other symptoms. [Filing No. 11 at 24-25.] She also points to evidence that she currently lives alone, but cannot leave the house alone, participates in college courses on her own time with no in-person or videoconference requirements, must rely on others to complete chores and care for her children, and her exams continue to show abnormal mood, affect, and insight. [Filing No. 11 at 24.] Braylie H. says that the ALJ's analysis of Paragraph C was in error for not properly evaluating this evidence. [Filing No. 11 at 24.]

The Commissioner responds that Braylie H. did not meet her initial burden and that she merely cites to her own subjective allegations in arguing that she crafted a highly structured setting and thereby satisfied the requirements of paragraph C. According to the Commissioner, this argument is at odds with medical evidence, as no medical source opined to such. [Filing No. 12 at 13.]

In reply, Braylie H. contends that the ALJ did not address medical evidence in evaluating whether she met criteria in Paragraph C, nor does the ALJ's discussion of Braylie H.'s medical history in connection with the RFC enlighten the ALJ's listings analysis. [Filing No. 14 at 2-3.] She reiterates that the ALJ's contention that her supportive living environment with her parents was a "normal environment" in the context of Paragraph C was error because it did not properly consider her inability to properly care for her children or leave the home without panic attacks. [Filing No. 14 at 3.]

The Paragraph C criteria for Listings 12.04 and 12.06 are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). In other words, the Paragraph C criteria address the situation where symptoms are not necessarily currently extreme but are "serious and persistent," and "could worsen if the person had to significantly change their daily routine." *See Carl D. v. Saul*, 2021 WL 363599, at *2 (N.D. Ind. Feb. 3, 2021).

The criteria in (C)(1) of Listings 12.04 and 12.06 are satisfied "when the evidence shows that [the claimant] rel[ies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00G(2). The criterion of (C)(2) is satisfied "when the evidence shows that, despite [the claimant's] diminished symptoms and signs," due to living in a highly structed setting, the claimant has "achieved only marginal adjustment." *Id.* The term "marginal adjustment" means that the claimant's "adaptation to the requirements of daily life is fragile" and requires evidence that "changes or increased demands

have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning," including "becom[ing] unable to function outside your home." *Id.*

While the ALJ is not held to a high bar of articulation at Step Three, some level of analysis is required. *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015). And although the Court must give deference to the ALJ's factual determinations underlying her listing assessment, the ALJ must consider all the evidence, particularly evidence contrary to the determination. *See Zurawski v. Halter* 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)). To demonstrate that the ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify record evidence that was misstated or ignored, and that could support a finding that claimant met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

At Step Three, the ALJ found that Braylie H. did not meet the Paragraph C criteria:

> The undersigned has also considered whether the "Paragraph C" criteria are satisfied, but in this case, the evidence fails to establish the presence of the "Paragraph C" criteria. Though the claimant has a documented history of mental impairment with treatment lasting longer than two years, she retains more than a minimal capacity to adapt to changes in her environment and to the demands that were of daily life. Most notably, the claimant has resided in a normal household environment, either alone or with family, throughout the period at issue here, without relying on the psychosocial supports of an institutional or other highly structured setting. Moreover, although the claimant reported persistent anxiety during the period at issue here, there is no evidence of her responding to stressors with disruptive, harmful, or otherwise maladaptive behaviors. Indeed, the claimant testified that she returned to college in January 2021, successfully proceeding towards a degree in psychology despite her mental symptoms. As a result, the undersigned finds that the claimant shows more than marginal adjustment, and thus the claimant's mental impairments do not satisfy the "Paragraph C" criteria of the applicable listings.

[Filing No. 9-2 at 22-23.] The ALJ did not discuss whether Braylie H. presented sufficient evidence to meet the Paragraph A criteria for Listings 12.04 and 12.06, apparently assuming she had presented such for purposes of issuing the decision. To demonstrate that the ALJ's Paragraph C

conclusion is not supported by substantial evidence, Braylie H. points to record evidence—including her treatments, living situation, and assistance with daily activities—indicating that each of the Paragraph C requirements were met.

In terms of her medical history, the record establishes that Braylie H. reported developing chronic anxiety at the age of thirteen or fourteen, however in September 2017, Dr. Breitweiser documented her reported symptoms as consistent with moderately severe generalized anxiety disorder. [Filing No. 9-2 at 24.] The medical record notes ongoing mental health treatments, including beginning medication in December 2019, and a course of treatment that began in February 2021. [Filing No. 9-2 at 24-25.] Braylie H.'s records show that following the December 2019 medication prescription, her anxiety was well controlled with no other symptoms, however she continued reporting anxiety symptoms outside of the home. [Filing No. 9-2 at 25.] Further, the ALJ made note that she has a documented history of mental impairment with treatment lasting longer than two years, and that the records document ongoing signs of anxiety even with treatment. [Filing No. 9-2 at 27.]

Regarding her living situation, Braylie H. contends that while she lives alone, she cannot leave the house alone, participates in college courses on her own time, in her home, with no in-person or video requirements, and must take frequent breaks or rely on others to complete chores and care for her children. [Filing No. 11 at 24.]

In *Herron v. Comm'r of Soc. Sec.*, 788 F. Supp. 2d 809 (N.D. Ind. 2011), the court remanded a determination that the claimant did not meet the Paragraph C criteria where the ALJ did not address "evidence that [claimant] was unable to function outside a highly supportive living arrangement, such as [claimant's] ex-wife's testimony that she had to treat [claimant] like a child,

that she had to seek help for him because his capabilities became progressively more limited, and that 'he didn't ever seem to know what he was doing.'"

Likewise, here, Braylie H.'s mother has given testimony that Braylie H.'s boyfriend assists her in caring for her sons and pets every day. [Filing No. 9-6 at 45.] Her mother says that Braylie H. hardly goes outside and when going outside, it is not alone. [Filing No. 9-6 at 47.]  Further, she says that Braylie H. does not spend time with others and when she visits other places, her mother reiterates that she must have someone to accompany her due to her anxiety and panic attacks. [Filing No. 9-6 at 48-49.] As for Braylie H.'s boyfriend, he similarly notes that he assists with the caring for their sons and pets, and that she does not go outside alone, hardly goes outside at all, and must be accompanied when outside of the home due to her anxiety. [Filing No. 9-6 at 64-67.] In addition to the record evidence and submitted statements, at the hearing, Braylie H. testified that her sons are with their father 50% of the time due to her impairments, when she shops for groceries she must do so as "pick up" rather than go into the store, and, because her sons get to school on the bus stop at their father's home, her parents are responsible for taking the children back and forth from their father's home to Braylie H.'s home. [Filing No. 9-2 at 46-56.] The ALJ had a duty to evaluate this evidence in the context of Paragraph C.

The ALJ made no findings and provided no discussion of the evidence that could support the Paragraph C criteria. The only mention of this evidence is in terms of Braylie H.'s subjective symptom analysis. The ALJ states that she has "resided in a normal household environment, either alone or with family," "without relying on the psychosocial supports of an institutional or other highly structured setting." [Filing No. 9-2 at 23.] However, the ALJ's decision omits any discussion of her parents' and boyfriend's assistance in her living situation and activities outside of the home, and whether such evidence supports a finding of marginal adjustment and improvement with a

highly structured environment. The ALJ has a duty to confront such evidence and explain how the evidence fit into the ALJ's analysis of the Paragraph C criteria, and the ALJ's failure to do so was error. *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("ALJ must confront the evidence that does not support her conclusion and explain why the evidence was rejected."). Thus, remand is warranted for further proceedings so that the ALJ can properly assess whether Braylie H. meets or medically equals Listings 12.04 or 12.06.

The Court takes no position on whether the evidence establishes that Braylie H. satisfies Paragraph C. Rather, the Court simply concludes that the ALJ improperly ignored related evidence or had reason to reject it but failed to explain her reasoning sufficiently. *See, e.g.*, *Bjornstad v. Kijakazi*, 2021 WL 5231736, at *4 (N.D. Ind. Nov. 9, 2021) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

### 2.   *Paragraph A and B Criteria*

Braylie H. raises arguments about the ALJ's analysis with respect to Paragraph B. [*See* Filing No. 11 at 19-23.] Because the Court is remanding so that the ALJ can fully consider evidence related to Paragraph C, the Court need not delve into these issues. Nevertheless, on remand, the ALJ should take care to fulfill her obligation to build a logical bridge from the evidence to the conclusion.

### B.   **SSR 16-3p Analysis**

Braylie H. raises another argument that the ALJ failed to properly build an accurate bridge between her subjective statements about the intensity, persistence, and limiting effects of her symptoms and the RFC. [Filing No. 11 at 7.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's subjective symptom evaluation

may be patently wrong where the ALJ fails to "build an accurate and logical bridge between the evidence and the result." *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (internal citation and quotation marks omitted). The ALJ must provide specific reasons supporting her or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

ALJs use a two-step process to evaluate an individual's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and determine "the extent to which an individual's symptoms limit her or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's symptom testimony, the ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* "[A]n ALJ need not discuss every detail related to every factor…." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

An individual's statements about intensity, persistence, and limiting effects of symptoms may not be disregarded "***solely*** because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006)

(holding that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony"). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Johnson*, 449 F.3d at 806.

At her hearing, Braylie H. testified that due to panic attacks when she leaves her home, she does not go into a grocery store, does not go to her parents' house, and does not take her children places unless the children's father is with her. [Filing No. 9-2 at 49-50.] The ALJ confronted Braylie H. about her panic attacks and anxiety, noting that when she takes medication, the symptoms improve. [Filing No. 9-2 at 51.] Braylie H. testified that while her anxiety improves with medication when at home, her anxiety and panic attacks continued frequently enough that they limited her functioning outside of the home. [Filing No. 9-2 at 51.] The ALJ concluded that although Braylie H.'s allegations represent a high degree of limitation that would substantially interfere with the performance of work-related tasks on a regular basis, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." [Filing No. 9-2 at 24.]

Following that statement, the ALJ summarized medical records and results of examinations and treatments. [Filing No. 9-2 at 24-25.] After summarizing the medical records, the ALJ concluded as follows:

> In considering how the claimant's impairments affect her functional capacity, the degree of limitation that she alleged is not wholly supported by the evidence of record. In her Adult Function Reports, the claimant alleged that she could maintain attention for only a few minutes at a time, further alleging difficulties with memory and task completion (*Exhibit 5E/10, 10E/10*). However, examination notes from the Harsha Behavioral Center show that, as recently as August 2021 the claimant retained normal attention, thought processes, and cognition, with no changes in her memory despite ongoing signs of anxiety (*Exhibits 8F/4-6, 10-12, 20-22, 9F/4-6*). Similarly, while the claimant testified that she suffers from frequent panic attacks, this allegation appears only partly consistent with the evidence of record. Although the claimant showed signs of anxiety and an intermittently

constricted affect, both her treatment records from the Harsha Behavioral Center and observation notes from her consultative examination show that the claimant displayed generally normal behavior and interpersonal function, with no signs of delusions, paranoia, disorientation, or hallucinations (*Exhibits 7F/4, 8F/4-6, 20-22, 9F/4-6*). As for the claimant's allegations of anxiety-related symptoms affecting her physical function, the record shows that she periodically sought medical attention in connection with alleged symptoms such as rapid heart rate, shortness of breath, or dizziness. However, objective examination notes show that her underlying physical function remained normal, with records from an exam at UMG Family Medicine as recently as April 2021 documenting regular heart rate and rhythm, with no respiratory abnormalities or focal neurological deficits (*Exhibit 10F/57*). Considering these factors, the record as a whole indicates that the claimant is subject to some ongoing limitations related to her mental symptoms, but these limitations are less severe than alleged, and he has possessed the capacity to perform a wide range of activities throughout the period at issue here.

[Filing No. 9-2 at 26.] Thus, the ALJ professes that she is discounting Braylie H.'s statements because her daily actives were not entirely consistent with the record, and the medical evidence of record and her treatment records indicate she was subject to some ongoing limitations but does not show impairments of such a limited level as claimant alleged. [Filing No. 9-2 at 26.]

Braylie H. contends the ALJ erred in her subjective symptom analysis in the following ways: (1) the ALJ erred in her analysis of the medical findings; (2) the ALJ cherry-picked reports of improvements and denials of anxiety and depression; (3) the ALJ was inconsistent in relying on notes of improvement but rejecting evidence of abnormal symptoms and limitations; (4) the ALJ erred by finding her statements regarding daily activities inconsistent; (5) the ALJ failed to examine and weigh third-party reports; and (6) the ALJ's analysis appears to assume Braylie H. was being untruthful. [*See* Filing No. 11.] The Court will address each argument in turn.

### 1.    Medical Findings, Limited Treatment, and Improvement with Treatment

First, Braylie H. argues that the ALJ was not qualified to determine that certain normal findings outweigh abnormal ones, "particularly where the ALJ rejected all medical opinions." [Filing No. 11 at 7-8.] She contends that it is unclear what evidence would have confirmed the severity of her anxiety and depression, when exams showed fidgeting and abnormal mood and

affect. [Filing No. 11 at 8.] Further, she argues the ALJ overlooked that "time-limited" exams showing normal attention, memory, and concentration do not necessarily undermine her panic attacks and reported difficulties in these areas on a sustained basis. [Filing No. 11 at 8.] Second, Braylie H. argues that the ALJ relied on report of improvements and denials of anxiety and depression, but these improvements were when Braylie H. was homebound, and does not suggest her symptoms improved enough for full-time employment. [Filing No. 11 at 9.] She supports this argument with noting that the ALJ relied on notes of denials in October and November 2018, however these exam notes were for non-psychiatric issues, and it is unclear and unlikely that a cardiologist and obstetrician evaluated her psychiatric symptoms. [Filing No. 11 at 9-10.] Third, she argues the ALJ was inconsistent in relying on notes of improvement but rejecting evidence of abnormal symptoms and limitations. [Filing No. 11 at 10.] Braylie H. contends that the ALJ failed to consider the impact of her abnormal insight, which may have resulted in inaccurate assessments of her true functioning level. [Filing No. 11 at 10-11.] She argues that her impaired insight impacted her improvement, notably when she often stopped taking or refused medications and endorsed paranoia that medical professionals were trying to deceive her. [Filing No. 11 at 11.]

The Commissioner responds that the ALJ's subjective symptom evaluation was well-supported and the ALJ was not obligated to credit all of Braylie H.'s subjective statements. [Filing No. 12 at 26.] The Commissioner primarily focuses on a harmless-error type analysis. The Commissioner argues that Braylie H. ignores the ALJ's analysis of the record medical evidence where she acknowledged some positive findings, but ultimately found that Braylie H. had largely normal results. [Filing No. 12 at 27.] Regarding the contention that the normal exam findings that the ALJ evaluated are "time-limited" and cannot be used to undermine her subjective allegations, the Commissioner argues that Braylie H. cites to no authority that supports such an assertion and

that claimants are routinely examined by their own providers as well as consultative examiners. [Filing No. 12 at 28.] The Commissioner argues that the ALJ considered both positive and negative findings, and that Braylie H. does not elaborate on what other evidence is available, other than her "abnormal insight", which may have resulted in inaccurate assessment of her functioning level, but this argument is speculative at best. [Filing No. 12 at 28-29.] The Commissioner notes that the evidence shows reports of "fair" to normal insight, and the ALJ did not hold Braylie H.'s instances of non-compliance against her. [Filing No. 12 at 29.]

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *5. However, "[i]n evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement … that [the allegations are (or are not) supported or consistent.'" *Id.* Here, the ALJ found that the "claimant's subjective allegations appear disproportionate relative to the objective observations of her treating physicians." [Filing No. 9-2 at 25.] The ALJ then analyzed Braylie H.'s medical records at some length as compared to her symptoms and allegations. [Filing No. 9-2 at 26-29.]

The ALJ began evaluating the record evidence by observing notes from a June 2019 visit to UMG Family Medicine, showing Braylie H. requesting medication or anxiety and depression, but Dr. Breitweiser noted that a depression screening one month prior was negative. [Filing No. 9-2 at 24.] The ALJ notes Dr. Breitweiser started Braylie H. on Atarax in December 2019 following complaints of panic attacks, and that in notes from a January 2020 follow-up, her anxiety was well controlled on medication with no other symptoms. The ALJ noted a September 2020 consultative examination with Dr. Kadlec, where he observed that Braylie H.'s affect was

appropriate, noting she made good eye-contact and demonstrated social reciprocity. [Filing No. 9-2 at 25.] Further, regarding her cognitive abilities, Dr. Kaldec noted that Braylie H. struggled on serial-sevens, but answered all other exercise correctly, demonstrating an intact fund of knowledge. [Filing No. 9-2 at 25.] The ALJ went on to note a December 2020 visit to UMG Family Medicine, where Braylie H. complained of anxiety, depression, and PMS, but she also displayed cooperative demeanor with appropriate mood and affect. [Filing No. 9-2 at 25.] Next, the ALJ noted a February 2021 treatment at the Harsha Behavior Center, where Braylie H. complained of anxiety, but that while she displayed a guarded mood and constricted affect, her behavior remained normal and she displayed intact memory, and normal attention, thought processes, and general cognition. [Filing No. 9-2 at 25.] The ALJ then noted a March 2021 check-up at Harsha Behavior Center and again during an unrelated visit to UMG Family Medicine, where she displayed a similar level of mental functioning, despite admitting to poor compliance with medication. [Filing No. 9-2 at 25.] Similarly, she ALJ noted an April 2021 check-up at UMG Family Medicine showing Braylie H. was cooperative, had appropriate mood and affect, and no cognitive impairment. [Filing No. 9-2 at 25.] Lastly, the ASJ observed that in a May 2021 visit to Harsha Behavioral Center, Braylie H. displayed a normal mental status, and while demonstrating an anxious mood and constricted affect at a further visit in August 2021, her behavior, attention, and cognition remained normal and unchanged. [Filing No. 9-2 at 25.] The ALJ concluded that Braylie H.'s subjective allegations appear disproportionate to the objective observations, with no evidence of significant episodes. [Filing No. 9-2 at 25.]

It is well-settled that an ALJ cannot discount a claimant's symptoms of pain based on medical evidence (or the lack thereof) alone. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); SSR 16-3p, 2017 WL 5180304, at *5 (instructing ALJs that they cannot "disregard an

individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"). So, the ALJ must have another valid reason for discounting a claimant's stated symptoms. For example, the nature and frequency of treatment sought by a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3).

The ALJ references Braylie H.'s treatment records and observation notes showing generally normal behavior and interpersonal function, along with essentially unimpaired cognitive abilities, but the records also document ongoing signs of anxiety even with treatment. [Filing No. 9-2 at 27.] While the ALJ acknowledges, and Braylie H. herself testified, that with medication she has reduced symptoms, [Filing No. 9-2 at 49-52], the ALJ does not confront that improvement appears to be while Braylie H. was homebound, that her symptoms are persistent outside of the home even with treatment, or how these symptoms would affect her in the workplace. *See, e.g.*, *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of . . . work[.]"); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). Similarly, the ALJ did not explain why the normal observation notes she cites are inconsistent with Braylie H.'s alleged symptoms, especially considering the relevant records of anxiety during the period and constricted affect.

The ALJ's factual summary of some of Braylie H.'s medical records and normal observations, without more, does not enable the Court to follow the ALJ's reasoning, and "it's not the role of the court (or, for that matter, the Commissioner's counsel) to assemble those pieces into a logical bridge." *Swims v. Kijakazi*, 2022 WL 16646417, at *3 (N.D. Ind. Aug. 10, 2022).

Therefore, the Court cannot discern from the ALJ's summary how the record was inconsistent with Braylie H.'s specific allegations.

**2. Daily Activities and Truthfulness**

Braylie H. argues the ALJ erred by finding her statements in June 2020 that she hiked three months earlier, and in September 2020 that she had been unable to leave her house in six months, inconsistent. [Filing No. 11 at 11.] Braylie H. contends that the ALJ's analysis appears to assume she was being untruthful, and this puts an inappropriate burden on her. [Filing No. 11 at 12.]

Regarding daily living, the Commissioner argues that Braylie H. has not shown that any error was harmful. Noting that part of the period in question was early in the COVID-19 pandemic when lockdowns were in place, this could very well explain Braylie H.'s alleged failure to leave the house beginning in March 2020. [Filing No. 12 at 29.] Further, the Commissioner notes that in September 2020, Braylie H. recalled a panic attack while hiking in June 2020, suggesting no more than a three-month period of not leaving the house. [Filing No. 12 at 29.] Lastly, the Commissioner argues that an ALJ need only minimally articulate reasons for crediting or rejecting evidence, and even if the ALJ erred, the evaluation need not be flawless. The Commissioner notes that Braylie H.'s counsel routinely alleges this argument, alleging a "disconcerting trend" of assuming claimants are being untruthful despite record evidence supporting their statements regarding limitations. [Filing No. 12 at 30.] The Commissioner argues, however, that the ALJ's decision does not assume Braylie H. was being untruthful and she cannot cite to the record for this claim. [Filing No. 12 at 30. The Commissioner contends that the ALJ is not required to accept wholly a claimant's perception of disability or statements, and that the ALJ did not doubt she had symptoms, but merely found they were not as limiting as alleged and as supported by the record evidence. [Filing No. 12 at 30.]

Here, Braylie H.'s argument is misplaced. It appears that at a June 18, 2020, visit with UMG Family Medicine, she reported an attempt to hike in early June 2020, was able to hike up steps and got out of breath, but this caused a panic attack and she went to the emergency room. [Fling No. 9-7 at 502.] As the ALJ found, she claimed in a September 2020 psychological evaluation that she was unable to leave her house for a six-month period, but there is no more than a three-month period between the hike and the evaluation. [Filing No. 9-2 at 25.] The ALJ stated plainly that this discrepancy was notable, "calling into question the accuracy of [Braylie H.'s] statements". [Filing No. 9-2 at 25.] As the Commissioner rightly points out, "[w]hile the law requires an ALJ to weigh all credible evidence and make unbiased factual findings, it does not compel the ALJ to accept wholly the claimant's perception of disability." *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). Therefore, the ALJ's statement regarding the accuracy of this statement is not in error and does not reflect an assumption that she was being untruthful.

### 3. Third-Party Statements

Lastly, she argues the ALJ erred in evaluating her mother's statements and by not specifically discussing her boyfriend's statements. [Filing No. 11 at 12-13.] The Commissioner responds that as the ALJ noted, they are not required to articulate how they considered evidence from non-medical sources using supportability and consistence, and that the statements appear redundant and are not considered entire lines of evidence. [Filing No. 12 at 30-31.] In reply, Braylie H. argues that the ALJ selectively chose evidence to consider by not addressing her boyfriend's statements. [Filing No. 14 at 8.]

SSA recognizes the importance of statements from family members. 20 C.F.R. § 404.1545(a)(3) (permitting claimant to submit "descriptions and observations" about her functional limitations from "family, neighbors, friends, or other persons"); SSR 16-3p (nonmedical

sources such as family and friends may provide helpful information to assess the claimant's intensity, persistence, and limiting effects of symptoms and must be considered properly).

It appears from the record that the ALJ did not mention or even acknowledge that Braylie H.'s boyfriend submitted a third-party statement. While the Commissioner may be correct that an ALJ need not articulate their consideration of a third-party statement, the ALJ was required to consider the third-party statements along with "other evidence in the record." Thus, the Commissioner failed to refute Braylie H.'s argument that the ALJ failed to articulate how or whether she considered a line of evidence—her boyfriend's third-party report. Remand is warranted on this issue.

Overall, because the ALJ did not adequately explain her subjective symptom assessment, substantial evidence does not support her finding and remand is warranted. *See Minnick*, 775 F.3d at 937. This does not mean that the ALJ must credit Braylie H.'s subjective symptoms on remand— only that the ALJ must apply regulatory factors and discuss the rationale for finding Braylie H.'s subjective statements inconsistent with specific reasons. *See Villano*, 556 F.3d at 562. Indeed, the ALJ may very well reach the same conclusion. But the ALJ's errors in evaluating Braylie H.'s subjective symptoms are not completely harmless. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("The only situations in which an error in … making a credibility determination can confidently be thought harmless are when a contrary determination would have to be set aside as incredible or when the trier of facts says that he would have made the same determination even if the circumstances had been different…."). The omission of findings required by SSR 16-3p and explanations would require the Court itself to fill in the logical gaps in the ALJ's decision. And such gap-filling is not allowed because the Court is forbidden from adopting reasoning not articulated by the ALJ. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v.*

*Chenery Corp.*, 318 U.S. 80, 87 (1943)) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on ground that the agency itself did not embrace.")

Because the ALJ failed to create a logical bridge, the ALJ's subjective-symptom finding is patently wrong, requiring reversal and remand. On remand, the ALJ must fully evaluate Braylie H.'s subjective symptoms under SSR 16-3p and articulate specific reasons supporting her evaluation.

### C.      Remaining Arguments

Braylie H. makes several other arguments regarding her RFC and medical opinions. However, since remand is warranted based on Braylie H.'s argument regarding the ALJ's Step Three and subjective symptom determinations as discussed above, these issues need not be addressed at this time. The Plaintiff can address her other concerns on remand.

**IV.**
CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Braylie H. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 9/27/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**